United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNIL INGLE,

Plaintiff,

v.

CRITEO CORPORATION,

Defendant.

Case No. 24-cv-04742-NW

**GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 47

Plaintiff Sunil Ingle was fired from his position as a software engineer for Defendant Criteo Corporation. Criteo claims Ingle was terminated for insubordination and poor performance; Ingle maintains that he was retaliated against for raising concerns that Criteo's practice of "web scraping"—using a software program to extract data from websites without permission—was unethical or illegal. After he was terminated, Ingle filed this lawsuit against Criteo for retaliation in violation of California Labor Code section 1102.5 (the California Whistleblower Protection Act) and wrongful termination in violation of public policy. Criteo now moves for summary judgment of the action under Federal Rule of Civil Procedure 56. ECF No. 47 ("Mot."). The motion is fully briefed, and the Court held a hearing on October 30, 2026. ECF Nos. 51 ("Opposition"), 57 ("Reply"). The Court GRANTS Criteo's motion for summary judgment.

## I. BACKGROUND[1]

Ingle was hired on January 18, 2022, as a software development engineer for Criteo on an

[1] The factual background is drawn primarily from the parties' undisputed material facts ("UMF"), as contained in Ingle's responses and objections to Criteo's UMF submission, and Criteo's responses and objections to Ingle's supplemental UMF submission. *See* ECF No. 51 at 110–28; ECF No. 58.

at-will basis. Ingle held the role for ten months, until November 2022. Several months after Ingle started the position, a project manager who worked with Ingle noticed he was not completing his assignments. Ingle does not dispute that he failed to complete projects, but maintains that he "completed all assigned tasks except for those he believed to be fraudulent and illegal." UMF No. 4. And while other senior software engineers were completing ten to twenty assignments per week, Ingle completed only ten assignments during his entire eleven-month tenure at Criteo.

In June 2022, Ingle was asked to solicit feedback from his peers for his mid-year employment review. But Ingle refused, instead asking to defer peer review until the end of the year, as there was "friction on his team" at the time. UMF No. 10. In a July 28, 2022 email to Ingle, Norman Shi, Ingle's supervisor, stated that Ingle's refusal to solicit peer feedback was "not an acceptable behavior." UMF No. 12. Nonetheless, Ingle "ignored [Shi's] direction" and never solicited peer feedback. UMF No. 14.

In August 2022, Ingle's low productivity became more acute. Ingle was assigned to a project he was told should "take[] precedence over any of your previous priorities." UMF No. 15. He was instructed to complete it by the end of the month. By September 13, however, Ingle had completed only 10% of the project. Ingle alleges that he intentionally paused the project to allow for a new ethics committee to review it in November 2022, but he was terminated before the review could take place.

In October 2022, Bobby Figueroa, a supervisor, emailed Ingle to express his concerns about Ingle's performance, noting that Ingle's "underperformance is unacceptable." UMF No. 34. He cited concerns about Ingle's unwillingness to take feedback or complete projects he did not believe were useful. Figueroa reassigned Ingle's unfinished August project to another engineer and warned that Ingle could be disciplined or terminated if his work did not improve.

On November 10, 2022, a group of Ingle's supervisors at Criteo received approval to terminate Ingle for poor performance. Ingle was terminated from Criteo on November 18, 2022.

During his employment with Criteo, Ingle alleges he became concerned that Criteo was illegally engaging in "click fraud or ad fraud"—a form of web scraping to collect retailers' data without consent. UMF Nos. 20, 41. The parties agree that Ingle had two conversations with other

Criteo employees about his concerns about potential ad fraud. First, he spoke with Ben Geller, a product manager, about the purpose of a project they were assigned. After discussing the project, Ingle testified that Geller "understood [the project] as an interference with ad units," and that it "may have been considered ad fraud." UMF Nos. 21–22; Declaration of Michael B. Sachs ("Sachs Decl."), Ex. A at 177:12–14. In a subsequent meeting with supervisors, Geller—but not Ingle—allegedly asked questions related to his conversation with Ingle, but did not receive a response. Second, Ingle asserts he spoke with his supervisor, Shi, about certain programs that prevent ad fraud. Shi acknowledged his familiarity with an ad fraud prevention program that Ingle mentioned, but made no other comments about it. In September 2022, Ingle attended an ethics meeting at Criteo, but never reported any concerns about the company's potential violations of the law. Ingle alleges that on September 20, 2022, he sent an email to Speak Up, Criteo's complaint reporting email, to report his concerns about Criteo's purportedly illegal ad fraud practices. Opposition at 23; *id.* at 41, 98 (Declaration of Sunil Ingle in support of Opposition, "Ingle Decl." ¶ 17 & Ex. I). Criteo disputes that the email was ever sent. Reply at 6–7.

On January 31, 2023, almost three months after his termination, Ingle submitted a complaint to Criteo's Speak Up email system. In it, he claimed that Criteo was "crawling" retailers' websites to collect data without the retailers' consent, and that this practice "technically amounts to [a]d [f]raud." Mot. at 14–15; UMF Nos. 24, 41.

On August 5, 2024, Ingle filed this lawsuit against Criteo for retaliation in violation of California Labor Code section 1102.5 (the California Whistleblower Protection Act) and wrongful termination in violation of public policy. *See* ECF No. 1 ("Compl."). Criteo now moves for summary judgment of the action under Federal Rule of Civil Procedure 56. *See* Mot. Criteo argues that Ingle did not report his concerns about the legality of web scraping prior to his termination, so he could not have been retaliated against for reporting Criteo's acts that Ingle believed were illegal; in any event, Ingle would have been terminated for independent reasons even if he had reported Criteo's web scraping practices. The motion is fully briefed, and the Court held a hearing on October 30, 2026. *See* Opposition; Reply.

## II. LEGAL STANDARD

A court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue of material fact exists if the evidence is sufficient to enable a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. In assessing summary judgment, the Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

## III. DISCUSSION

Ingle asserts two related claims against Criteo: retaliation in violation of California Labor Code section 1102.5 and wrongful termination in violation of public policy. Ingle's section 1102.5 claim alleges that Criteo terminated Ingle in retaliation for disclosing what he reasonably believed to be violations of "laws pertaining to fraud and various other common law and statutory provisions," as listed in Ingle's complaint. *See* Compl. ¶ 16. Ingle's claim of wrongful termination in violation of public policy is derivative of his statutory retaliation claim—the public policy Ingle alleges Criteo violated is section 1102.5. Compl. ¶¶ 21–26. Because Ingle's wrongful termination claim only succeeds if he establishes his section 1102.5 claim, the Court focuses its analysis on the alleged violation of section 1102.5.

As explained by the California Supreme Court,

> Section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee "has reasonable cause to believe . . . discloses a violation of state or federal statute" or of "a local, state, or federal rule or regulation" [1] with a government agency, [2] with a person with authority over the employee, or [3] with another employee who has authority to investigate or correct the violation.

*Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022) (quoting *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022)); *see* Cal. Labor Code § 1102.5(b). To prove retaliation under section 1102.5, a plaintiff must first "establish, by a preponderance of the

evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Killgore*, 51 F.4th at 982 (quoting *Vatalaro v. Cnty. of Sacramento*, 79 Cal. App. 5th 367, 379 (2022)); Cal. Lab. Code § 1102.6 (setting forth the substantive standards and burdens of proof for both parties in a section 1102.5 retaliation case). Once the plaintiff has made the required showing, "the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Killgore*, 51 F.4th at 982 (quoting *Lawson*, 12 Cal. 5th at 718). "[U]nder section 1102.6, a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual." *Vatalaro*, 79 Cal. App. 5th at 379. His burden only is to show that "the employer also had at least one *retaliatory* reason that was a contributing factor in the action." *Lawson*, 12 Cal. 5th at 716 (emphasis added).

**1. Prima Facie Claim of Retaliation**

The Court begins by addressing whether Ingle has met his burden to establish that retaliation for his protected activities was a contributing factor in Criteo's decision to terminate him. Criteo argues that Ingle engaged in *no* protected activities for which he could have been retaliated against, because he did not report the conduct he believed to be illegal—Criteo's web scraping—until three months after he was terminated, when he submitted his complaint to Criteo's "Speak Up" email address for reporting complaints. Mot. at 18–19. Criteo is correct: "[s]uch a timeline does not support a retaliation claim because an individual cannot be subject to retaliation for engaging in protected conduct that takes place after the adverse employment action." *Ting v. Adams & Assocs., Inc.*, 823 F. App'x 519, 523 (9th Cir. 2020).

But Ingle responds that he reported Criteo's web scraping *during* his employment, "including verbal and written disclosures to his supervisor (Norman Shi), team members (Ben Geller) and his efforts to seek venues within the company such as Criteo's Ethics Committee, Speak Up Group (Criteo's internal whistleblower system) to report these very issues." Opposition at 7. The parties agree that Ingle had two conversations with other Criteo employees about

potential ad fraud involved in a "commerce display ads" project he was assigned.[2] Mot. at 12–13; UMF No. 20. First, he spoke with Ben Geller, a product manager, about the purpose of a project they were assigned, and Geller's understanding that the project may have been considered ad fraud. Geller—not Ingle—asked about the project during a meeting with supervisors but did not receive a response. Because Ingle evidently did not report his conversation with Geller to anyone else, Ingle's conversation with Geller can at most be construed as a report of his concerns regarding ad fraud to Geller. And there is no evidence that Geller was "a person with authority over" Ingle, or that Geller had "authority to investigate . . . or correct the violation," as required under section 1102.5. Cal. Labor Code § 1102.5(b); *see* UMF Nos. 22–24. Ingle's conversation with Geller therefore is not a protected activity that is actionable under section 1102.5.

Next, Ingle discussed certain programs that prevent ad fraud with his supervisor, Norman Shi. Shi presumably had "authority over" Ingle, as his supervisor, such that Ingle's reporting ad fraud to Shi would be protected activity under section 1102.5, assuming Ingle had reasonable cause to believe the ad fraud was illegal. Cal. Labor Code § 1102.5(b). But as part of his prima facie retaliation claim, Ingle must establish there is a causal link between his protected activity and his termination, and he cannot do so without establishing that Criteo *knew* he had engaged in protected activity before terminating him. *Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013) ("The employer's awareness is an essential component of the causal link."). Here, there is no evidence that Shi understood Ingle's comments about ad fraud prevention programs to be a report that Criteo was violating a "state or federal statute, or [failing to comply]

---

[2] Though Ingle asserts that he "repeatedly raised concerns to Norman Shi and with team member Ben Geller and documented on the Jira ticket that the 'Commerce Display Scraping' project . . . constituted ad fraud," these assertions are not supported by any evidence aside from Ingle's own declaration. Opposition at 22; *id.* at 32–36 (Ingle Decl.). Criteo objects that Ingle's declaration is a "sham affidavit" because it contradicts his deposition testimony, in which he testified that he had only two conversations with other Criteo employees about ad fraud. Reply at 5–6; *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). The Court agrees. Not only did Ingle testify at deposition that he had only two verbal conversations about ad fraud during his employment, but he also affirmatively stated that fact was "[u]ndisputed" in response to Criteo's UMF No. 20. Accordingly, the Court STRIKES the Declaration of Sunil Ingle to the extent it contradicts his prior testimony that he only had two verbal conversations about ad fraud during his employment with Criteo.

United States District Court
Northern District of California

with a local, state, or federal rule or regulation" by committing ad fraud. Cal. Labor Code § 1102.5(b).

At his deposition, Ingle testified that in "midsummer," he discussed with Shi "the commerce display ad ticket," and "technologies like SafeFrames" that are specifically built for preventing this sort of thing[], clickjacking." Sachs Decl., Ex. A at 169:1–2; 172:14–16. When asked how Shi responded, Ingle answered that Shi "was dismissive about it. . . . He acknowledged the SafeFrames because he worked on it during his Yahoo days, but he would not hear any further." *Id.* at 172:17–23. This obtuse exchange, without more, does not establish by a preponderance of the evidence that Shi understood Ingle to be engaging in protected activity by reporting Criteo's illegal ad fraud. Ingle's testimony does not explain why he raised the issue of SafeFrames with Shi; how, if at all, SafeFrames related to Ingle's work or experiences at Criteo; or what Ingle intended or expected Shi or Criteo to do with the information. Without this evidence, it is unclear how Shi could have interpreted his and Ingle's discussion of SafeFrames to be a report that Criteo was conducting illegal ad fraud. To the contrary, Shi's "dismissive" response suggests that Shi did not understand the context of the conversation, even if Ingle's intention was to report ad fraud, as he claims. Consequently, Ingle has failed to allege that this interaction was a retaliatory reason for his termination by Criteo.

Ingle also claims that prior to his termination, on September 20, 2022, he submitted a written report of Criteo's ad fraud to Criteo's Speak Up email address. *See* Opposition at 23; *id.* at 41, 98 (Ingle Decl. ¶ 17 & Ex. I). In support of his Opposition, Ingle produced an unauthenticated email dated September 20, 2022, and signed "Sunil," in which the author voices concerns that "using proxies [to collect retailer data online]" is "unethical if not illegal[.]" Opposition at 23; *id.* at 41, 98 (Ingle Decl. ¶ 17 & Ex. I). In his opposition brief and declaration, Ingle claims he sent the email to Speak Up on September 20, 2022. *Id.*

Criteo states that the September 20, 2022 email is "a draft email [Ingle] was working on, that was never sent to Defendant." Reply at 6. At the hearing, Criteo's counsel confirmed that the September 20, 2022 email was produced to Ingle from the "Draft" folder of Ingle's former Criteo email account, in response to Ingle's request for a "draft complaint." Criteo further points out that

Ingle previously conceded during his deposition that he "never sent anything to SpeakUp" during his employment with Criteo, and that he sent his first complaint to Speak Up in January 2023—*after* his termination. Reply at 6–7; ECF No. 57-1 (Declaration of Armando Solorzano, "Solorzano Decl."), Ex. 1 at 303:1–14. In his deposition, Ingle explained that he did not send anything to Speak Up during his employment because he "was in the process of drafting the email." Solorzano Decl. Ex. 1 at 304:9–14.

Where a party submits an affidavit that creates an issue of fact by contradicting admissions in his prior deposition testimony, a district court may disregard the contradictory declaration for summary judgment purposes under the "sham affidavit rule." *Yeager*, 693 F.3d at 1080. In such situations, the issues of fact are not "genuine" and may not be used to preclude summary judgment. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (applying sham affidavit rule where plaintiff's declaration denied statements material to his employment claim that he had previously admitted in deposition). "[T]o trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Yeager*, 693 F.3d at 1080 (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)).

Here, the Court cannot accept Ingle's claim that he did, in fact, send the September 20, 2022 email complaint to Speak Up that he previously testified he did not send. Ingle was asked multiple times during his deposition whether he had sent anything to Speak Up while he was employed at Criteo; he repeatedly responded that he had not. Solorzano Decl. Ex. 1 at 303:1–305:12. And though Ingle's complaint references several documents allegedly evidencing his refusal to engage in Criteo's "illegal scheme" to "steal clients' proprietary and copyrighted data," the September 20, 2022 email is nowhere mentioned in his pleading. Compl. ¶ 5(b).

Tellingly, Ingle first relied on the September 20, 2022 email as evidence of a protected activity preceding his termination in response to Criteo's summary judgment argument that Ingle had reported ad fraud to Speak Up only *after* he was terminated. *See* Opposition at 23; *id.* at 41, 98 (Ingle Decl. ¶ 17 & Ex. I). As Criteo points out in its reply and reiterated at the hearing, no

evidence corroborates Ingle's claim that he actually *sent* the September 20, 2022 email to Speak Up instead of merely saving it as a "draft." The email, which is attached to Ingle's declaration as Exhibit I, lacks foundation and is not authenticated. Reply at 5–6. That Ingle uses the terms "drafted" and "sent" interchangeably in his opposition and declaration, while perhaps inadvertent, further undermines his claim. *See* Opposition at 13 ("Plaintiff *drafted* an email to Speak Up Group about what was taking place in Gradient team" on September 20, 2022); *id.* at 23 (On September 20, 2022, "nearly two months *before* his termination, Plaintiff *sent* an email to the internal 'Speak Up' group . . . ."); *id.* at 46 (identifying the September 20, 2022 email as a "*draft* email to Speak Up group") (emphases added).

If authentic, the September 20, 2022 email is the only document or evidence in the record that would potentially show that Ingle engaged in a protected activity that is actionable under section 1102.5. It defies credulity that Ingle would gain a "sudden ability to remember the answers to important questions about the critical issues of his lawsuit" in the face of Criteo's summary judgment motion. *Yeager*, 693 F.3d at 1081. Consequently, the Court STRIKES Ingle's declaration as a sham affidavit to the extent it contradicts his prior admission that he sent nothing to the Speak Up complaint email prior to January 2023, and finds that the draft, unsent September 20, 2022 email allegedly reporting Criteo's ad fraud to the Speak Up email does not reflect protected activity under section 1102.5.

**2. Criteo's Independent Reasons for Termination**

Because Ingle has not established that he engaged in protected activity while employed by Criteo, he cannot establish a prima facie claim of retaliation under section 1102.5. Criteo's reasons for terminating Ingle therefore could not have been retaliatory. While the Court need not address Criteo's independent reasons for terminating Ingle, the Court notes that the undisputed material facts establish that Ingle was not performing well at Criteo, and that was the basis for his termination. *See, e.g.*, UMF No. 4 (even early in his tenure, Ingle "was not completing assignments"); UMF Nos. 9–14 (Ingle "refused to obtain peer feedback during the review process," which he was informed was "not an acceptable behavior"); UMF Nos. 33–34 (Ingle's supervisor conveyed his disappointment in Ingle's lack of progress on a project, stating, "this level

of underperformance is unacceptable"); UMF No. 39 (Ingle was advised that "continuing to fail to meet deliverables would be met with corrective action that could include termination").

**B. Wrongful Termination in Violation of Public Policy**

As discussed above, because Ingle's retaliation claim fails, his derivative claim for wrongful termination in violation in public policy falls with it.

## IV. CONCLUSION

Because Ingle has not established a prima facie claim of retaliation, Criteo's motion for summary judgment as to Ingle's claim for retaliation in violation of section 1102.5 (count 1) is GRANTED. Consequently, Criteo's motion for summary judgment as to Ingle's derivative claim for wrongful termination in violation in public policy (count 2) is also GRANTED. Ingle's claims in this case will be DISMISSED WITH PREJUDICE.[3] The Clerk of Court will terminate all future deadlines and close the case.

**IT IS SO ORDERED.**

Dated: November 20, 2026

Noël Wise
United States District Judge



[3] Because the Court grants Criteo's summary judgment motion and dismisses Ingle's claims, Criteo's *Daubert* motion (ECF No. 49) is TERMINATED AS MOOT.